**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheila Kinzer, | No. CV11-328-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Sheila Kinzer appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on her appeal (Doc. 14).

**I.   BACKGROUND**

   **A.   Procedural Background**

On May 22, 2007, Plaintiff, Sheila Kinzer, filed an application for disability insurance benefits under Titles II and XVIII of the Social Security Act, alleging a disability onset date of November 1, 2002. (Tr. at 83). The Commissioner denied benefits on August 14, 2007, (Tr. at 49), and Plaintiff requested reconsideration. Plaintiff was again denied on December 12, 2007, (Tr. at 54), and she appealed.

On March 26, 2009, Administrative Law Judge ("ALJ") Norman R. Buls held a hearing on Plaintiff's claim. (Tr. at 24-40). Following the ALJ's unfavorable decision, (Tr. at 9-21), Plaintiff appealed to the Appeals Council. After the Appeals Council denied

Plaintiff's request for review, (Tr. at 1), Plaintiff filed an appeal with this Court. (Doc. 14). Plaintiff argues that the ALJ wrongly failed to (1) consider the evidence of her treating physicians, (2) properly weigh her self-reported symptoms, and (3) consider third-party reports. (Doc. 14 at 18-30).

**B.  Medical Background**

The Court will briefly summarize Plaintiff's medical history, which is thoroughly recounted in the record. Plaintiff's medical records, beginning in January 2002, reflect extensive treatment for low back pain. In January 2002, Plaintiff was injured in a car accident and diagnosed with an L4-L5 herniated disc. (Tr. at 408). She was subsequently treated on numerous occasions for pain in her neck, shoulders, and lower back. (Tr. at 270). In August 2002, Dr. Matthew J. Ross, a spine specialist, treated Plaintiff for her back pain, which had forced her to stop working full time as an electrician. (Tr. at 559). By November 2002, Plaintiff again stopped working due to pain, and has not worked since. (Tr. at 202, 14).

Plaintiff continued to complain of lower back pain, for which she received numerous treatments. In April 2003, Dr. M. Hanna gave Plaintiff sacroiliac joint injections. (Tr. at 198-99). In June 2003, Plaintiff was under the regular care of orthopedic specialist Dr. Nelson Escobar, and she showed improved functional capabilities after physical therapy and injections. (Tr. at 191-92). As of October 2003, Dr. Escobar diagnosed Plaintiff with chronic lumbrosacral myofascial pain, sacroiliac joint dysfunction, piriformis syndrome, and medial lumbo pelvic dysfunction. (Tr. at 188-89). In December 2003, Dr. James Gruft, her treating pain specialist, noted that she had made significant functional improvements and was capable of returning to work, though not as an electrician. (Tr. at 395-96) (noting, for example, that Plaintiff could now walk a mile). Plaintiff continued to suffer from pain, however, and continued regular treatment. Most recently, she has been treated by Dr. Michael S. Biscoe, who opined in 2007 that she was disabled prior to 2005. (Tr. at 774).

In her application for benefits and at the ALJ hearing, Plaintiff alleged that she suffered from low back pain, auto-immune hepatitis, migraine headaches, gastritis, and depression, among other ailments. The ALJ found that Plaintiff suffered severe impairments

of low back pain, gastritis, headache, and history of auto-immune hepatitis. (Tr. at 14). The Court will not further recount Plaintiff's extensive medical history.

## II.   DISABILITY

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### B.   Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting,

1 carrying, reaching, understanding, carrying out and remembering simple instructions, 2 responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 3 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at 4 least twelve months," be expected to last for such a period, or be expected "to result in 5 death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). 6 The "step-two inquiry is a de minimis screening device to dispose of groundless claims." 7 *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe 8 impairment, then the claimant is not disabled.

9  3. Having found a severe impairment, the ALJ next determines whether the 10 impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 11 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before 12 proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual 13 functional capacity based on all the relevant medical and other evidence in [the] case record." 14 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most she can still 15 do despite all her impairments, including those that are not severe, and any related symptoms. 16 20 C.F.R. § 404.1545(a)(1).

17  4. At step four, the ALJ determines whether, despite the impairments, the claimant can 18 still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this 19 determination, the ALJ compares its "residual functional capacity assessment . . . with the 20 physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 21 404.1520(f). If the claimant can still perform the kind of work she previously did, the 22 claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

23  5. At the final step, the ALJ determines whether the claimant "can make an adjustment 24 to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making 25 this determination, the ALJ considers the claimant's "residual functional capacity" and her 26 "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can 27 perform other work, she is not disabled. If the claimant cannot perform other work, she will 28 be found disabled. As previously noted, the Commissioner has the burden of proving that the

1 claimant can perform other work. *Reddick*, 157 F.3d at 721.

2 In evaluating the claimant's disability under this five-step process, the ALJ must
3 consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b.
4 This includes medical opinions, records, self-reported symptoms, and third-party reporting.
5 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ applied the five-step sequential evaluation process using Plaintiff's alleged onset date of November 1, 2002 and last insured date of December 31, 2005. (Tr. at 12). The ALJ found in step one of the sequential evaluation process that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of November 1, 2002. (Tr. at 14). The ALJ then found Plaintiff to have the following severe impairments through her last insured date: "low back pain; gastritis; headache; and history of auto-immune hepatitis." (Tr. at 14). Under step three, the ALJ noted that none of these impairments met or medically equaled one of the listed impairments that would result in a finding of disability. (Tr. at 16). The ALJ then determined that Plaintiff's residual functional capacity was the ability to perform "the full range of sedentary work." (Tr. at 16). In applying this assessment, the ALJ found under step four that Plaintiff was unable to perform any of her past relevant work. (Tr. at 20). In step five, the ALJ considered the Plaintiff's age, education, work experience, and sedentary work capabilities in concluding that the Plaintiff could perform a number of jobs in the national economy. (Tr. at 20). The ALJ thus concluded that Plaintiff was not disabled.

### D. This Court's Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve

- 5 -

1 conflicts in the evidence, and if the evidence can support either outcome, the court may not 2 substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th 3 Cir. 1992). Under this standard, the Court will uphold the ALJ's findings if supported by 4 inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 5 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a 6 whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." 7 *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation omitted).

## III.   THE OPINIONS OF PLAINTIFF'S TREATING PHYSICIANS

### A.   Legal Standard

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)); *see also* SSR 96-2p at 4 ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2); *see also Orn*, 495 F.3d at 631. On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other substantial evidence in the record," then it should not be given controlling weight. *Orn*, 495 F.3d at 631.

### 1.   Substantial Evidence

Substantial evidence that contradicts a treating physician's opinion may be either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the case of an examining physician, "[w]hen an examining physician relies on the

- 6 -

same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1984)). To constitute substantial evidence, the examining physician must provide "independent clinical findings that differ from the findings of the treating physician." *Id.* (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either "diagnoses that differ from those offered by another physician and that are supported by substantial evidence, . . . or findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." *Id.*

### 2.    Discounting of a Treating Physician's Opinion

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527(d). *Orn*, 495 F.3d at 631; SSR 96-2p at 4. These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527(d).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are

1  supported by substantial evidence in the record." *Id.* (quoting *Lester*, 81 F.3d at 830).

2  **B.  Discussion**

3  Plaintiff argues that the ALJ erred in not giving the medical opinions of Dr. Ross and
4  Dr. Biscoe controlling weight in resolving any conflicts in Plaintiff's medical record. (Doc.
5  14 at 18). In the alternative, Plaintiff argues that even if the ALJ properly refused to give Dr.
6  Ross's opinion controlling weight, the opinion was still entitled to deference and should not
7  have been rejected. (Doc. 22 at 4).

8  The first issue is whether Dr. Ross's opinions were contradicted by substantial
9  evidence in Plaintiff's medical record. The ALJ discounted Dr. Ross's opinion, giving it no
10 controlling weight, on the basis that "it is not well-supported by the doctor's treatment notes
11 or other objective findings in the case record." (Tr. at 17). As Dr. Ross was a treating
12 physician, the ALJ may discount his opinion only if it is contradicted by substantial evidence.
13 *See Orn*, 495 F.3d at 631.

14 Dr. Ross treated Plaintiff for her back pain from June 2002 until April 2003. (Tr. at
15 109, 200). In November 2002, Dr. Ross found Plaintiff to have tenderness in her right lumbar
16 muscles and over the right sacroiliac joint and upper gluteal musculature. (Tr. at 202).
17 Plaintiff reported "significant pain in her low back and right buttock area." (Tr. at 202). He
18 diagnosed either a herniated L5-S1 disc or myofascial pain due to a piriformis syndrome, and
19 stated that "[i]n the meantime I do not think the patient is capable of returning to full duty
20 work as an electrician." (Tr. at 202). By January 2003, Dr. Ross narrowed his diagnosis to
21 sacroilitis and myofascial pain, and recommended that "the patient remain off work for an
22 additional month." (Tr. at 201). On April 22, 2003, Dr. Ross noted that he was
23 recommending additional treatment and that "[i]n the meantime the patient does not appear
24 to be capable of working in any capacity." (Tr. at 200).

25 The ALJ found substantial contradictory evidence in the treatment records of other
26 examining physicians who provided independent clinical findings, as well as substantial
27 record evidence. Specifically, the ALJ noted the opinion of pain specialist Dr. Gruft, who
28 indicated in December 2003 that although Plaintiff was unable to return to her past work as

- 8 -

1 an electrician, she had significant functional improvement and had "made very good
2 progress." (Tr. at 18) (citing Tr. at 450-51). The ALJ also noted Plaintiff's contemporaneous
3 medical records, which showed in April 2003 that Plaintiff had "markedly reduced" pain at
4 a level of "2-3/10." (Tr. at 17).

5       The ALJ also considered the contradicting opinion of Dr. Escobar, a treating
6 physician. (Tr. at 18). The ALJ considered Dr. Escobar's September 2003 report, which
7 indicated that Plaintiff was "very happy that she is making some progress," was walking
8 more, and had improved flexibility. (Tr. at 18) (citing Tr. at 191-92). Additionally, the ALJ
9 relied upon Plaintiff's subsequent treatment records, which showed continuing treatment
10 through 2004, and no further treatment during 2005. (Tr. at 18) (citations omitted).

11       Plaintiff argues that Dr. Ross's treatment notes are supported by Plaintiff's other
12 treating physicians, including Drs. Hanna and Biscoe. (Doc. 14 at 20-21). Though Plaintiff
13 states that "[t]here appears to be consensus that Ms. Kinzer's pain is multifactorial" and that
14 her physicians "consistently treat Ms. Kinzer for low back pain with slight variations in what
15 they consider the etiology of her pain," (*id.* at 21), neither the Commissioner nor the ALJ
16 dispute that Plaintiff suffers from low back pain. Rather, Plaintiff argues that the ALJ erred
17 in discounting Dr. Ross's opinion that "[i]n the meantime the patient does not appear to be
18 capable of working in any capacity."[1] Accordingly, the opinions of Drs. Hanna and Biscoe
19 do not support the particular opinion of Dr. Ross that Plaintiff places at issue.

20       Plaintiff additionally argues that the ALJ "must cite an abundance of evidence to
21 justify the crediting of non-examining physician evidence and rejection of treating source
22 opinion evidence." (Doc. 14 at 22). However, the ALJ is required only to point to "specific
23 and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*,
24 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830). Substantial evidence contradicted Dr.

---

[1] The Court notes that Dr. Ross's phrase "in the meantime" does not necessarily mean that Plaintiff meets the definition of disability, which requires that the impairment last for at least twelve months. *See* 20 C.F.R. § 404.1509. Dr. Ross may have opined only that Plaintiff was disabled as of April 22, 2003, the date of his treatment record. (Tr. at 200).

- 9 -

1 Ross's opinion that Plaintiff was incapable of working in any capacity. The ALJ pointed to
2 Dr. Escobar and Dr. Gruft's treatment records, which showed that, though Plaintiff was
3 unable to perform her past work as an electrician, she had made significant progress, was
4 walking more, and was able to lift ten pounds. (Tr. at 17-18).

5 Though the ALJ did not explicitly detail his reasons for discounting Dr. Ross's
6 opinion, it is clear from the record, as discussed above, that the ALJ's decision was supported
7 by substantial evidence in the record. This Court "may not substitute its judgment for that of
8 the ALJ," *Matney*, 981 F.2d at 1019, and must uphold the ALJ's findings if supported by
9 inferences reasonably drawn from the record. It was not unreasonable for the ALJ to find Dr.
10 Ross's opinion to be contradicted by substantial evidence,[2] and it was not unreasonable for
11 the ALJ to deny giving controlling weight to Dr. Ross's opinion.

12 Although the ALJ did not give Dr. Ross's opinion controlling weight, the opinion
13 remained entitled to deference and the ALJ was required to weigh the opinion according to
14 the factors enumerated in 20 C.F.R. § 404.1527(d). Here, the ALJ decided to entirely reject
15 Dr. Ross's opinion regarding Plaintiff's disabled status, finding instead that Plaintiff had a
16 residual functional capacity "to perform the full range of sedentary work." (Tr. at 16). While
17 the ALJ's opinion does not contain an explicit analysis of these factors, it is clear that the
18 ALJ weighed them in reaching his decision. One factor instructs the ALJ to consider the

---

[2] Plaintiff also argues that the ALJ "cherrypicked" the record to obtain this substantial contradictory evidence, and that the record as a whole does not contain substantial evidence that contradicts Dr. Ross's opinion. (Doc. 14 at 18); (Doc. 22 at 6-7). This Court has reviewed Plaintiff's reply, (Doc. 22 at 6-7), and finds that the record does not support Plaintiff's claims. For example, Plaintiff argues that the rehabilitation hospital report states that "Ms. Kinzer can sit a maximum of 40 minutes at a time" and that "Ms. Kinzer must spread tasks out over the day." (*Id.* at 6). However, the report states only that "[s]tanding time is 20 minutes without rest," and that "Ms. Kinzer must spread *these difficult* tasks out over the day." (Tr. at 395-96) (emphasis added) (referring to "activities with prolonged sitting or standing"). To the extent that Plaintiff's argument is valid, it is irrelevant to this Court's decision. The ALJ's decision need only be supported by substantial evidence, which the Ninth Circuit has said is less than a preponderance and only more than "a mere scintilla." *Thomas*, 278 F.3d at 954.

1 extent to which the opinion is supported by relevant medical evidence, § 404.1527(d)(3), and
2 in this case the ALJ found that the opinion was not well-supported by objective findings in
3 the record. (Tr. at 17) ("it is not well-supported by the doctor's treatment notes or other
4 objective findings in the case record"). The nature of Dr. Ross's opinion also further supports
5 the ALJ's decision. Dr. Ross opined as to Plaintiff's disabled status, which is an opinion on
6 an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). While the ALJ will
7 "review all of the medical findings and other evidence that support a medical source's
8 statement that [a claimant is] disabled," a physician's statement of disability is not binding
9 on an ALJ. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes*
10 *v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ decided that Dr. Ross's opinion as
11 to Plaintiff's inability to work was contradicted by substantial evidence. This Court cannot
12 say that the ALJ's decision was not supported by a rational interpretation of the evidence.
13 Accordingly, the ALJ did not err in discounting Dr. Ross's opinion.

14 Plaintiff also argues that the ALJ erred in discounting the opinion of Dr. Biscoe. (Doc.
15 14 at 18-19). The ALJ found that Dr. Biscoe's opinion was not entitled to controlling weight
16 because "it contrasts sharply with the other evidence of record prior to December 31, 2005,
17 which renders it less persuasive." (Tr. at 15). As with Dr. Ross, the issue here is whether
18 substantial evidence in the record contradicts Dr. Biscoe's opinion.

19 Dr. Biscoe began treating Plaintiff in August 2007, (Tr. at 781), nearly two years after
20 her Social Security insured status expired on December 31, 2005. Dr. Biscoe opined at the
21 time that Plaintiff was disabled, and repeated his assertion in March 2008, (Tr. at 774),
22 October 2008 (Tr. at 873), and March 2009. (Tr. at 904). In his March 2009 medical
23 assessment, Dr. Biscoe opined that Plaintiff was disabled prior to December 31, 2005. (Tr.
24 at 905). Dr. Biscoe did not provide a specific explanation for the basis of his opinion.

25 The ALJ concluded that Dr. Biscoe's opinion was not entitled to controlling weight
26 but did not explicitly state a reason for his conclusion. (Tr. at 15). Nevertheless, the ALJ
27 demonstrated specific and legitimate reasons for discounting Dr. Biscoe's opinion when he
28 discussed the substantial evidence that contradicted Dr. Ross's opinion. This evidence, which

1   the Court has outlined in its discussion of Dr. Ross's opinion, includes Dr. Gruft's treatment
2   records and Plaintiff's April 2003 medical records showing markedly reduced pain. *See* (Tr.
3   at 450-51, 180). It was not unreasonable for the ALJ to rely upon this evidence in finding Dr.
4   Biscoe's opinion not to be entitled to controlling weight.

5          The next question is whether the ALJ erred in rejecting Dr. Biscoe's opinion. As a
6   treating physician, Dr. Biscoe's opinion is entitled to deference even if not given controlling
7   weight. *Orn*, 495 F.3d at 631. As with Dr. Ross, the ALJ did not explicitly discuss all of the
8   factors enumerated in 20 C.F.R. § 404.1527(d). However, the Court finds that when the
9   whole of the ALJ's opinion is considered, the ALJ adequately weighed these factors. The
10  ALJ systematically reviewed all of Plaintiff's evidence and determined that substantial
11  evidence contradicted Dr. Biscoe's opinion. (Tr. at 15-20); *see also* (Tr. at 180-81, 191-92,
12  209, 450-51). The ALJ also explicitly found that Dr. Biscoe's opinion was inconsistent with
13  the record as a whole. (Tr. at 15); *see also* 20 C.F.R. § 404.1527(d)(5).

14         Although Drs. Ross and Biscoe may provide some mutual support for each other's
15  opinions, Dr. Biscoe's opinion is entitled to even less weight than Dr. Ross's opinion because
16  Dr. Biscoe's treatment of Plaintiff was not contemporaneous with the disability period at
17  issue (prior to December 31, 2005). *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996)
18  (finding the opinion of a psychiatrist who examined the claimant after the expiration of the
19  insurance period to be entitled to less weight than a psychiatrist who conducted a
20  contemporaneous exam); *Magallanes*, 881 F.2d at 754 (ALJ reasonably found
21  contemporaneous reports more persuasive than a subsequent "conjecture"). Furthermore, the
22  ALJ may reject the "opinion of any physician, including a treating physician, if [the] opinion
23  is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at
24  957. Dr. Biscoe failed to provide a specific explanation for the records upon which he relied
25  in making his opinion of disability. Thus, the ALJ not only reasonably denied giving
26  controlling weight to Dr. Biscoe's opinion, but also reasonably rejected Dr. Biscoe's opinion
27  as unsupported by the whole of the record. The ALJ's decision was supported by substantial
28  evidence.

Therefore, the ALJ did not err in rejecting the opinions of Drs. Ross and Biscoe and giving their opinions no weight.

## IV.   PLAINTIFF'S REPORTED SYMPTOMS

### A.   Legal Standard

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce her pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96-7p at 2; *Carmickle*, 533 F.3d at 1160-61 ("reasonable inference, not a medically proven phenomenon").

Once a claimant has shown that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ then must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence; the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; medication taken; treatments for relief of pain or other symptoms; and other factors. 20 C.F.R. § 404.1529(c); SSR 96-7p at 3.

At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for

finding the clamant to not be credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036).

### B.     Discussion

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 17). Under the second step of the analysis, the ALJ then found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 17). The parties dispute whether the ALJ offered "clear and convincing reasons" for his determination that Plaintiff's self-reported symptoms were not credible. *See* (Doc. 14 at 23-24); (Doc. 19 at 17).

The Commissioner initially argues that an ALJ need not provide clear and convincing reasons for discrediting a claimant's testimony regarding subjective symptoms, merely findings "properly supported by the record [and] sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (en banc) (quotation marks and citation omitted). *Bunnell* does not mention a "clear and convincing" standard, and the Commissioner argues that since no subsequent en banc court has overturned *Bunnell*,[3] the *Bunnell* standard remains the law of the Ninth Circuit. (Doc. 19 at 15-16). The Commissioner has previously failed to persuade this Court to adopt his argument. *See Tropp v. Astrue*, No. CV06-606-PCT-JAT, 2012 WL 869444, at *5 (D. Ariz. 2012). No Ninth Circuit cases have purported to overturn *Bunnell*, but subsequent cases have merely elaborated on its holding. It is clear that the Ninth Circuit has accepted the clear and convincing standard. *See, e.g.*, *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter*, 504

---

[3] Only an en banc court can overturn existing Ninth Circuit precedent. *United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995).

- 14 -

1  F.3d at 1036; *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.
2  1989).

3　　　　The ALJ provided clear and convincing reasons for finding Plaintiff's self-reported
4  symptoms not to be credible, and explicitly stated that his finding on the credibility of
5  Plaintiff's statements was based "on a consideration of the entire case record." (Tr. at 16).
6  Plaintiff quotes *Lester* for the proposition that an ALJ must provide "specific, cogent reasons
7  of [his] disbelief" and that "[g]eneral findings are insufficient; rather, the ALJ must identify
8  what testimony is not credible and what evidence undermines the claimant's complaints."
9  (Doc. 22 at 9) (quoting *Lester*, 81 F.3d at 834). Here, the ALJ thoroughly and specifically
10 discussed the objective evidence that undermined Plaintiff's complaints. *See* (Tr. at 17-20).

11　　　　With respect to Plaintiff's back pain, the ALJ discredited Plaintiff's testimony based
12 on numerous treatment notes and objective medical findings, including her "routine and
13 conservative treatment." (Tr. at 17). Plaintiff argues that the ALJ improperly inferred from
14 Plaintiff's conservative treatment, which stemmed from her limited treatment options, that
15 Plaintiff was not in significant pain. (Doc. 14 at 23). The Commissioner quotes *Parra v.
16 Astrue* for the proposition that "evidence of conservative treatment is sufficient to discount
17 a claimant's testimony regarding severity of an impairment," (Doc. 19 at 17) (quoting *Parra
18 v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)), but fails to note that in *Parra*, the
19 "conservative treatment" was mere "over-the-counter pain medication." *Parra*, 481 F.3d at
20 751. Here, Plaintiff's conservative treatment consisted of physician-administered injections
21 (including sacroiliac injections, trochanteric bursittis injections, and iliac spine injections).
22 (Tr. at 17-18).

23　　　　While the evidence of Plaintiff's injection treatments is not clear and convincing
24 evidence that discredits her testimony, her contemporaneous functional evaluations and
25 testimony to her treating physicians were clear and convincing reasons for the ALJ to
26 discredit her testimony. The ALJ observed that Plaintiff told Dr. Escobar in June 2003 that
27 she was "very happy that she [was] making some progress," (Tr. at 18), and that Dr. Gruft
28 evidently believed that she was capable of working in some capacity, though not as an

- 15 -

1  electrician. (Tr. at 18) (citing Tr. at 399). The ALJ also cited evidence that Plaintiff was able
2  to lift ten pounds in December 2003 and was making progress in physical therapy. (Tr. at 18).
3  More importantly, the ALJ specifically related Plaintiff's testimony to the objective medical
4  evidence and gave specific, clear, and convincing reasons for discrediting her testimony. (Tr.
5  at 19). For example, the ALJ found that though Plaintiff alleged she suffered from chest pain,
6  the medical records repeatedly showed that Plaintiff had normal medical findings. (Tr. at 18-
7  19). To the extent that Plaintiff had gastritis or gastroesophageal reflux disease, *see* (Tr. at
8  296-97, 215) (prescribing Pepcid and Nexium medication for the conditions), the
9  Commissioner correctly notes that "[i]mpairments that can be controlled effectively with
10 medication are not disabling." (Doc. 19 at 18) (quoting *Warre v. Comm'r of Soc. Sec.
11 Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). And the ALJ did not wholly disregard
12 Plaintiff's testimony, but only discredited it to the extent that it was inconsistent with
13 Plaintiff's residual functional capacity, which the ALJ found to include the "ability to stand
14 and walk for two hours in an 8-hour workday." (Tr. at 16). Thus, the ALJ's credibility
15 determination was adequately supported by substantial evidence in the record.

16       Plaintiff argues that the ALJ erred in stating that "[w]hile [Plaintiff] may have had
17 back pain and discomfort, there was no evidence of nerve, muscle or joint damage that could
18 have caused severe weakness or loss of function." (Doc. 14 at 28). In support of this
19 statement, the ALJ cited to Dr. Ross's treatment records, (Tr. at 19), which noted that in
20 April 2003 Plaintiff performed toe and heel walking with "good strength" and that her
21 "[m]otor strength is full in both lower extremities." (Tr. at 200). This analysis was improper.
22 "[T]he ALJ may not reject subjective symptom testimony . . . simply because there is no
23 showing that the impairment can reasonably produce the *degree* of symptom alleged."
24 *Smolen*, 80 F.3d at 1282 (emphasis in original). Here, the ALJ rejected Plaintiff's subjective
25 symptom testimony in part because he found no showing that her back pain and discomfort
26 could have reasonably produced "*severe* weakness or loss of function." (Tr. at 19) (emphasis
27 added). Thus, to the extent that the ALJ relied upon this statement in finding Plaintiff's
28 testimony to be not credible, the ALJ erred. But, as explained below, this error was harmless.

1  The ALJ also considered Plaintiff's daily living activities in his credibility analysis. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681. In his opinion, the ALJ "inferred that the claimant maintained a somewhat normal level of daily activity and interaction." (Tr. at 19). This finding was based upon the Plaintiff's alleged performance of "significant activities each day" and "[shopping] twice a month." Here, the ALJ failed to make any specific findings as to how Plaintiff's activities, such as occasional grocery shopping, driving, and preparing simple meals, showed particular skills that could be transferred to the workplace. In fact, the record cited shows that Plaintiff performed grocery shopping with her husband and without pushing the cart, unloading the cart, or putting groceries in the car. (Tr. at 135). The ALJ did not show that the level of activity was inconsistent with Plaintiff's claimed limitations, and therefore these activities have little, if any, bearing upon Plaintiff's credibility. *See Reddick*, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Accordingly, the ALJ erred in using Plaintiff's daily activities to discredit her subjective symptom testimony without making specific findings as to how those activities were inconsistent with her claimed limitations.

Such legal error is harmless, however, if the ALJ's decision remains legally valid despite the error. *Carmickle*, 533 F.3d at 1162. Here, the ALJ's decision remains legally valid. The ALJ discredited Plaintiff's testimony based on several reasons, and his "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." *Id.* As discussed above, the ALJ provided clear and convincing reasons for finding Plaintiff not to be credible. The ALJ correctly discredited Plaintiff's

- 17 -

1 testimony as long as his decision rests upon at least one legally valid reason; it does not
2 matter if his decision also rested on two legally invalid reasons. Thus, the although the ALJ
3 erred in discrediting Plaintiff's testimony (1) based upon a lack of showing that Plaintiff's
4 impairments could reasonably produce the severity of pain alleged and (2) based upon
5 Plaintiff's daily activities, the ALJ's decision to discredit Plaintiff's testimony was legally
6 valid.

## V.     LAY WITNESSES

### A.     Legal Standard

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony regarding the claimant's inability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)); *see also* 20 C.F.R. § 404.1513(d). An ALJ cannot disregard lay witness testimony without comment, *Bruce*, 557 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so only upon providing specific reasons that are "germane to each witness." *Id.* (quoting *Nyugen*, 100 F.3d at 1467); *Stout*, 454 F.3d at 1054. When an ALJ errs in failing "to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### B.     Discussion

In this case, the ALJ failed to properly discuss lay testimony favorable to Plaintiff. Plaintiff's husband completed a third-party function report in June 2007. (Tr. at 115). The ALJ twice cited to this report in his opinion, but only cited to those portions which were favorable to a finding of non-disability. (Tr. at 17, 19) ("The claimant's husband reported that the claimant is capable of bathing and grooming, preparing simple meals, driving a car, walking, shopping, watching television, spending time without others, and talking on the telephone."). The ALJ failed to specifically discuss the husband's testimony that Plaintiff "can not walk much," "has problem . . . sitting for long," "can not walk up or down stairs or

- 18 -

ramps," and can walk only the "length of [a] house" before having to stop and rest. (Tr. at 115, 120). The ALJ then disregarded this testimony to the extent that he found it inconsistent with Plaintiff's residual functional capacity assessment, (Tr. at 17, 19-20), but did not specifically comment on his reasons for so doing. This was legal error. *See Bruce*, 557 F.3d at 1115 (lay testimony "cannot be disregarded without comment").

However, the Court concludes that no reasonable ALJ, even if fully crediting this testimony, could have reached a different disability determination. Plaintiff's husband described limitations and disabilities in his report that are very similar to, and consistent with, those which Plaintiff described in her report. *See* (Tr. at 132-40). This Court concludes that the ALJ's decision to discredit Plaintiff's testimony was supported by substantial evidence, and since Plaintiff's husband's testimony is consistent with Plaintiff's testimony, it would be reasonable for an ALJ to disregard Plaintiff's husband's testimony as well. Moreover, Plaintiff's husband filed his report in June 2007, nearly two years after Plaintiff's last insured date of December 31, 2005. (Tr. at 115). His testimony is inconsistent with Plaintiff's medical records from the relevant time period, such as the December 2003 report from Dr. Gruft which showed Plaintiff as able to "climb 3 flights of stairs," (Tr. at 395), and Plaintiff's own testimony. *See, e.g.*, (Tr. at 191-92). If Plaintiff's husband's testimony were fully credited, at best it corroborates Plaintiff's testimony regarding her condition in June 2007. But the ALJ properly discredited Plaintiff's testimony. Therefore, the ALJ's error in disregarding Plaintiff's husband's testimony was harmless.

**VI.   CONCLUSION**

The Court finds that the ALJ did not err in denying controlling weight to, and ultimately rejecting, the opinions of Plaintiff's treating physicians. The Court finds that the ALJ gave clear and convincing reasons, based upon substantial evidence in the record, for finding Plaintiff's subjective symptom testimony to not be credible, and to the extent that the ALJ erred in offering additional justifications for discrediting Plaintiff's testimony, such error was harmless. The Court finds that the ALJ erred in failing to provide specific reasons for disregarding the testimony of Plaintiff's husband, but such error was harmless because

1 his testimony, if credited, could not have lead a reasonable ALJ to a finding of disability.
2 Accordingly,
3 **IT IS ORDERED** affirming the Commissioner's denial of benefits.
4 DATED this 12th day of April, 2012.

James A. Teilborg
United States District Judge